UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MARTIN J. WALSH, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, | ) ) ) ) | CASE NO.: _____-cv-_____ |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| AETC INC., | ) ) ) | |
| Defendant. | ) ) | **C O M P L A I N T** **(Injunctive Relief Sought)** |

Plaintiff Martin J. Walsh, Secretary of Labor, United States Department of Labor ("the Secretary"), brings this action for injunctive and other appropriate relief pursuant to the provisions of § 11(c) of the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651, *et seq.*, (the "Act)."

1. Jurisdiction over this action is conferred upon the Court by § 11(c)(2) of the Act, 29 U.S.C. § 660(c)(2).

2. This action is brought by the Secretary pursuant to authority granted by § 11(c)(2) of the Act, 29 U.S.C. § 660(c)(2).

3. At all times material hereto, Defendant AETC Inc. ("AETC") is and has been a person within the meaning of § 3(4) of the Act, 29 U.S.C. § 652(4), and an employer engaged in a business affecting commerce within the meaning of § 3(5) of the Act, 29 U.S.C. § 652(5).

4. Defendant AETC is a corporation with headquarters in East Point, Georgia and is therefore within the jurisdiction of this Court.

5. From approximately May 17, 2018 until January 15, 2021, Steven-Lee Ware ("Ware") was employed by AETC as a guest services representatives at the Hartsfield-Jackson Atlanta International Airport ("the Airport").

6. Ware was an employee of AETC within the meaning of § 3(6) of the Act, 29 U.S.C. § 652(6).

7. Vanessa Givan ("Givan") is Respondent's Human Resources Manager and Operations Manager.

8. Givan was Ware's direct supervisor at the time of Ware's termination on January 15, 2021.

9. On January 11, 2021, following his shift working for AETC at the Airport, Ware learned that he had been in close contact with a person who had tested positive for COVID-19.

10. Ware subsequently called Givan three times on January 11, 2021 to attempt to notify her of his exposure to COVID-19 and seek guidance for his next steps.

11. When Givan did not answer any of these calls, Ware sent her a text message at approximately 9:25 p.m. on January 11, 2021 in another attempt to notify her of his exposure to COVID-19.

12. When Givan did not answer this text either, Ware called her again the next morning, January 12 (the "January 12 call"). Givan answered Ware's January 12 call.

13. During the January 12 call, Ware informed Givan of his exposure to COVID-19 and told Givan that he was going to take a COVID-19 test.

14. Givan did not inform Ware of any AETC protocol pertaining to COVID-19 to follow during the January 12 call.

15. Ware did not report to work between January 12 and January 15, 2021, due to his exposure to COVID-19 and potential COVID-positive status.

16. AETC permitted Ware to be absent from work between January 12 and January 15, 2021, due to his exposure to COVID-19 and potential COVID-positive status.

17. At approximately 10:12 a.m. on January 14, 2021, Givan texted Ware to inquire about his COVID-19 test results. Ware responded that he had not yet received his test results.

18. However, later that day, Ware received his COVID-19 test results.

19. Accordingly, at 3:32 p.m. on January 14, 2021, Ware sent Givan another text message informing her that he had tested positive for COVID-19.

20. During the morning or early afternoon of January 15, 2021, Ware received a call from a coworker with whom he had been in close contact at the Airport on January 11, 2021, after he had been exposed to COVID-19.

21. During that call, Ware's coworker told him that she had noticed he had been absent from work for several days. In response, Ware informed her that he had tested positive for COVID-19.

22. Ware's coworker then informed him that nobody at AETC had notified her that she could have been exposed to COVID-19, through Ware, while working for AETC.

23. Ware was concerned upon learning that AETC had not notified coworkers with whom he had been in close contact on January 11, 2021 that those coworkers were exposed to COVID-19. Ware's concern was particularly heightened because he was aware of other incidents in which AETC had not informed him or other employees that they had been exposed to coworkers who were later discovered to be COVID-positive. Instead, Ware found out about

those instances of potential exposure after the fact from the COVID-positive employees themselves.

24. Therefore, in an effort to notify his coworkers of their potential exposure to COVID-19 through close contact with Ware on January 11, 2021, Ware sent a group text message to the other employees with whom he had come into close contact that day notifying them of his COVID-positive status.

25. Sometime later on January 15th, Givan became aware of Ware's communications with other AETC employees regarding his COVID-positive status. She subsequently initiated a phone call with Ware regarding his communications with other employees.

26. During this call, Givan asked Ware to stop discussing his COVID-positive status with other AETC employees.

27. In response to this request, Ware informed Givan that he could not promise not to tell other employees who reached out to him to ask him about his COVID status.

28. Following this call, Givan spoke with Shawnalea Garvin ("Garvin"), AETC's CEO, also on January 15. Garvin directed Givan to terminate Ware immediately.

29. Shortly thereafter, Givan terminated Ware orally in a phone call that occurred sometime prior to 3:23 p.m on January 15, 2021.

30. Givan then sent an email to Ware detailing his termination ("the termination email") at 3:23 p.m. on January 15, 2021. The termination email stated that "the decision to terminate your employment came after you refused to comply with AETC [sic] request not to share your personal information with our staff." The termination email did not identify any specific policies or procedures Ware allegedly violated.

31. Later on January 15, 2021, Ware timely filed a complaint with OSHA, alleging that the aforesaid discharge constituted discrimination in violation of §11(c)(1) of the Act, 29 U.S.C. §660(c)(1).

32. Upon receipt of such complaint, OSHA conducted an investigation pursuant to § 11(c)(2) of the Act.

33. OSHA determined that Defendant violated § 11(c)(1) of the Act by terminating Ware because of his exercise of rights protected under the Act.

34. Ware's notifying his coworkers of a workplace health hazard – exposure to COVID-19 through close contact with him – constitutes a protected activity within the meaning of § 11(c)(1) of the Act.

35. AETC, through Givan, knew that Ware informed his coworkers about their potential exposure to a health hazard in the workplace.

36. AETC fired Ware specifically and explicitly because he discussed a workplace health hazard with coworkers, as set forth in Paragraph 34 above.

37. AETC fired Ware specifically because of his exercise of rights secured by the Act.

38. AETC intentionally discriminated against Ware by terminating him under these circumstances in violation of §11(c)(1) of the Act, 29 U.S.C. § 660(c)(1).

39. As a result of this unlawful discrimination, Ware suffered loss of wages, other financial losses and emotional distress related to their termination.

40. AETC's termination of Ware is likely to deter employees from discussing or reporting potential safety and health hazards and, therefore, has a chilling effect on employees' exercise of rights under the Act at the worksite.

WHEREFORE, cause having been shown, the Secretary prays the Court to enter an Order:

(1) finding that Defendant AETC unlawfully discriminated against Ware in violation of § 11(c)(1) of the Act, 29 U.S.C. § 660(c)(1);

(2) permanently enjoining AETC and its agents, servants, employees and all persons in active concert or participation with them from violating the provisions of § 11(c)(1) of the Act, 29 U.S.C. § 660(c)(1);

(3) directing AETC to make Ware whole through payment of his lost wages, other benefits, and compensatory damages suffered by reason of such unlawful discrimination, plus interest calculated at the rate set forth in the Internal Revenue Code § 6621, 26 U.S.C. § 6621;

(6) directing AETC to expunge any records with respect to Ware's termination or protected activities and to not disparage him in any way;

(7) directing AETC to post a notice for its employees stating AETC will not in any manner discriminate against employees because of their engagement in activities protected under the Act;

(8) directing AETC to train its officers and managers in the protections afforded to employees who report safety hazards under § 11(c)(1) of the Act, 29 U.S.C. § 660(c)(1);

(9) granting a reasonable amount of punitive damages;

(10) granting the Secretary his costs; and

(11) ordering such other appropriate relief as may be necessary or appropriate.

<u>ADDRESS</u>:

Office of the Solicitor
U. S. Department of Labor
61 Forsyth Street, S.W.
Room 7T10
Atlanta, GA  30303


Telephone:
 (404) 302-5471
 (404) 302-5438 (FAX)
Miller.daniel.p@dol.gov
ATL.FEDCOURT@dol.gov

SEEMA NANDA
Solicitor of Labor

TREMELLE I. HOWARD
Regional Solicitor

MONICA R. MOUKALIF
Civil Rights Counsel


By:  */s/Daniel P. Miller*
       DANIEL P. MILLER
       Trial Attorney

Office of the Solicitor
U. S. Department of Labor
Attorneys for Plaintiff

SOL Case No. 22-00235

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2023, I electronically filed a Complaint with the Clerk of Court using the CM/ECF system, which will electronically send to the following counsels of record:

>Halima Horton White
>hwhite@theemploymentlawsolution.com

>*/s/ Daniel P. Miller*
>DANIEL P. MILLER
>Trial Attorney
>Office of the Solicitor
>U.S. Department of Labor
>61 Forsyth Street, S.W., Suite 7T10
>Atlanta, GA 30303
>(404) 302-5445
>(404) 302-5438 (FAX)
>miller.daniel.p@dol.gov
>Atlanta Docket
>Atl.fedcourt@dol.gov